Number 181552, Vigil Creations, Inc. v. IDL Worldwide, Inc. Thank you. Mr. Allen. Good morning. Good morning. May it please the Court, my name is Kevin Allen, I represent IDL Worldwide. I respectfully request one minute for rebuttal. You may. Thank you, Your Honor. This is a commercial case. It's governed by the UCC. The contract that is immediately at issue here was a contract with the UCC that was worth roughly $11 million. These are two commercial parties that would qualify as merchants under the UCC. Both have businesses that are at least national in scope. The issue that was tried below is whether the appellee, Vigil Creations, Inc., or VCI, is bound by a mandatory arbitration provision that was in the contract form of IDL. Now this case, based on that description... Contract formation is the issue, isn't it? Yes, Your Honor. I know your position is that the formation occurred at a different point than the appellee's assert, but contract formation is the issue here. That's correct, Your Honor. Thank you. I agree. Contract formation is at issue. In relation to contract formation, the case may have the hallmarks of a battle of the forms because we are seeking to have our mandatory arbitration form controlled, but it's not a battle of the forms case. This case, frankly, absent a reversal, would I think, at least as far as I've found, represent the only case where one commercial party is insistent upon using another commercial party's form, contract form, which includes an arbitration provision, but the other commercial party, in this case VCI, seeks to be relieved of the duty to comply with the provisions of the contract form, which they themselves have insisted upon. So that's factually the setting for the case. What's illogical about that at all? Two parties make a contract. One highly material term, like price, is an estimate by both parties' accounts, a very close estimate, and they agree that they'll verify that in the subsequent document, and then the subsequent document verifies within a very small percentage the price term. You're saying that everything else, all commercial terms that accompany that second communication, would be binding on the first party, and I don't see the logic of why that necessarily follows, particularly if they're material alterations. We do believe that it follows, Your Honor, because the common law rule was that mirror image was necessary. The acceptance had to be the mirror image of the offer. But that's not true under the UCC. That's correct, and the UCC established an exception to the mirror image rule because the UCC was addressed to the battle of forms question and said, well, we can't have somebody just trying to sneak in their terms in the last form when the other party had their own terms in their form. So yes, correct, the UCC is an exception to the mirror image rule, but I would lay this out in our brief. What is not an exception to the mirror image rule are the Dickert terms, and with respect to the Dickert terms, the mirror image rule is in full force and effect, and the Dickert terms being principally price and scope of work. So you're saying that if two parties negotiate, say, a $100 million contract, and the party that's paying comes back and says it's actually going to be $100 million plus $10, and the party that's receiving the check says, fine. You're saying that that's a Dickert term? I think it is a Dickert term. And the $10 would be if they had agreed that the earlier $100 million was an estimate, that the verification to the satisfaction of both parties that that estimate was within $10 of the final price opens the whole thing to the commercial terms. A predicate for your question, Your Honor, is that at the initial phase where the parties said this is an estimate, I would submit that if the parties are just, if the quote initial agreement is, hey, this is just an estimate, and this is going to change, and in the case we had here, this is the January 17 and 18 email exchange, they did say, and I'm paraphrasing, but they did say, hey, your prices were close, so you guys go ahead, we're going to follow with a purchase order. So the predicate for your question is, well, if it's just an estimate, and I would submit that that's exactly the circumstance where you have a Pearl Evans rule, where there is preliminary negotiations, perhaps an interim agreement, where the parties are saying, we're going to finalize it later. So to your initial point, I would say if the initial agreement is only at an estimate, that is a perfect time and the appropriate time for a Pearl Evans rule. To take the next part of your question, Your Honor, let's say it's not an estimate, and let's say that they had a firm price, which is not what happened here. But that's not what happened here, so we don't need to worry about it. Was there a statement of work for this project? There was a formal statement of no. These parties, in the past, they've had a statement of work for some of them. You had an original agreement with them that covered a number of commercial terms, most prominently confidentiality and the like, as I understand. Two separate things happened back in 2014, which are not the contracts that the parties are suing on here. But in 2014, there were two separate agreements that I think the Court is referring to. One is a supplier agreement, which is sort of a misnomer. It was essentially a confidentiality agreement. And then the second was a statement of work for the 2014 version of this, of the work that was done in the Best Buy stores. And that was a prior deal between the two of them? That's correct. And that statement of work had an interesting clause in it. It says in it that the purchase of the financial terms of the purchase order would be binding on VCI. I don't have it in front of me, but I know exactly the quote you're referring to. And if my memory serves, there are two sentences. VCI focuses on the second one. The first sentence says something to the effect of, final terms will be set forth in a purchase order. Exactly, period. Then it says the financial terms. That's a pretty strong negative inference for you that you've got to deal with under the sufficiency of the evidence test, isn't it? Because that implies to me that the commercial terms of the purchase order are not necessarily binding on the recipient. Otherwise, why would you have that second sentence? Why wouldn't you just say all terms of the purchase order are binding? Well, I don't think it was artful drafting, but, Your Honor, in my view. Artful drafting doesn't help you when you're trying to attack a jury verdict where we've got a sufficiency of the evidence test. If it's an ambiguous reading of that clause, we've got to assume the jury read it against you, don't we? I think that's fair on if we were to have a – if a jury were probably considering that contract, which, again, was in 2014. But how about the course of dealing? You make a lot in your brief of the parties' course of dealing. You tell us that the VCI had repeatedly seen these purchase orders, so we should deem them to know what they say, notwithstanding the font, which is a pretty good argument on course of dealing. But you've got to take the good with the bad. The other aspect of the course of dealing is they're told, with respect to those purchase orders, that the financial terms are binding. How do you get around that? Well, I would – I disagree, Your Honor, based on both sentences, that it says that the financial – the second sentence says what it says, but the first sentence does say the terms of the agreement will be set by purchase order. I think the second sentence is a point of emphasis that they're not going to change the price. That's what I interpret the second sentence to be referencing. But certainly the jury – if the jury had been properly impaneled, I'm not suggesting that the jury couldn't take that into account, which, if I may segue to the issue of the jury, because I think there's two issues of whether this was an appropriate matter for a jury to consider. The first is that we submit that it was error to impanel a jury in the first place, and then relatedly that error was compounded by Chief Judge Smith, because even if it were appropriate to have impaneled the jury, there was an issue for the court to decide under the Parole Evidence Rule as a matter of law, even in the face of competing evidence. And this, Your Honor, would I think answer your question. Was there competing evidence? I think there was competing evidence on contract formation and a rating, but I'll turn to the Parole Evidence Rule first. What we suggested to the district court on multiple occasions, and I don't think that this is disputable, respectfully, is that if there is a jury impaneled, there is a job, a gatekeeping role, for a district court to first perform, even with a jury impaneled. And that's under the Parole Evidence Rule. The court has a decision to make as a matter of law, even in the face of competing evidence. And that question for the district court to have decided is whether there is a rating that was intended by the parties as a final expression of their agreement. I mean, doesn't that presuppose that your purchase order is the contract? And doesn't that leap ahead of the issue of what constituted formation of the agreement? I mean, I agree with you that if the court had decided that your purchase order, then, yeah, I think the Parole Evidence Rule would kick in. But it seems to me that that's putting the cart before the horse. In a way it is, but that's the law. At least initially, the district court has to make that call, one way or the other. The district court has to look at it, and even in the face of competing evidence, it is not akin to a summary judgment standard. Even in the face of competing evidence, the district court has to say yes or no. But isn't implicit in the court's decision that the issue of formation, regardless of whether you think it was properly presented to a jury, but that the issue of formation had to go to the jury for them to decide? I think that's exactly what the court did, and I think that's the error, Your Honor. Isn't the Parole Evidence Rule actually irrelevant here? Because it seems to me that the predicate for your application of the Parole Evidence Rule, and this is, I think, is that the purchase order was a complete and unambiguous setting forth of the terms of the contract. Hence, we cannot look at prior communications to vary it. But if you're correct that the purchase order in total was a complete and unambiguous setting forth of the terms of the contract, then you just win. We don't even get to the Parole Evidence Rule at all. But if you're wrong that it wasn't, then the Parole Evidence Rule isn't applicable. So the Parole Evidence Rule just drops out of the equation altogether. We have to simply answer the first question, are you ray that the purchase order is a complete and unambiguous setting forth of the terms of the agreement? If it is, you win. If it isn't, we're off to the races. I think everything you said is correct, Judge. And I'll take it one step further. To answer that question, as your brief does, as both sides do, we can look at custom and practice of the policies in terms of how they regarded and treated that. You want us to look at the fact they'd already seen the purchase order, so they can hardly be running from it. The issue we have here, everything that Your Honor just said, I believe that I agree with. Where the district court erred was that the district court has to make that decision as a matter of law. Initially, the district court says... But the district court, it seems to me, decided that the purchase order was not a complete and unambiguous... Otherwise it wouldn't have let the case go to the jury. Well, that's the problem, Your Honor, is that the district court did not make that decision. Well, we know it must have made it because it let the case go to the jury and then would not set aside the jury finding. So since the jury finding was contrary to your reading of the contract, the district court must have rejected the notion that your reading of the contract was one that was compelled by law. What I submit that the district court did was the district court concluded, a la a summary judgment standard, that there were competing issues of fact. And I'm suggesting, and I submit that this is incontestable under the law, is that that was the error. The district judge had to make a decision initially on whether, having heard competing or considered the competing evidence, whether there was a writing intended by the parties as the final expression of their agreement. That is what the district court had to do. What the district court instead said was that there's competing issues of fact, and so it was submitted to the jury. That itself was the error. The district court had to make a call. I compared it to a Daubert motion where there's competing evidence on both sides before an expert will be allowed to testify. You're over your time. This will be taken from your reserve time otherwise. Thank you. May it please the court. Steven Snow for VCI. Chief Judge Smith did not abuse his discretion when he refused to abide by the last minute, what he calls sleight of hand attempt of IDL to disclaim their reliance upon Section 4 of the Federal Arbitration Act. I think putting this in context may be helpful. This case started when VCI brought a suit against IDL for almost $5 million that was unpaid under the purchase price. As part of that legal action, we alleged that the contract, and both parties agreed it was a contract between them to sale of goods, but that the contract was formed on January 18 of 2017 and that it did not contain an arbitration clause. We also, besides the legal action, had a count in equity seeking to enjoin IDL from proceeding with an arbitration that they had filed in Pittsburgh. That was followed up by VCI filing a motion to stay the arbitration supported by an affidavit, and IDL then filed a mirror image motion to dismiss the complaint or the alternative to stay the action and to compel arbitration pursuant to Section 4 of the Arbitration Act, which provides for a jury trial that is demanded on a timely basis pursuant to Section 4. The judge denied that motion, finding that the jury demand in the complaint sufficed under Section 4. And the parties agreed then to a jury trial. IDL didn't object at that time. In fact, they cooperated in setting a date for a jury trial. However, a week later, they changed their mind, filed a motion to strike the jury demand based upon Section 4, alleging that it was untimely because, according to their interpretation, the demand in the complaint was insufficient. We needed to make a separate duplicative demand under Section 4. Chief Judge Smith denied that motion. And then on the day before trial, IDL files a motion for reconsideration. At least that's how they denominated it. It actually wasn't a motion for reconsideration because a motion for reconsideration is limited. It's an extraordinary remedy limited to a situation where there's newly discovered evidence that wasn't available, which was not the case here, or where there's a manifest error of law by the court, which was also not the case here. The error that they alleged was IDL's own error. They took the position that we shouldn't have filed it under Section 4, and therefore we're now withdrawing it. And Judge Smith correctly refused to let them get away with that. Turning now to the issue that they raised in their motion to strike the jury, as to whether or not the jury demand in the complaint sufficed, there's not a lot of case law on that. But the case law that they rely upon is easily distinguishable, the leading case being the Birch v. P.J. Cheese case. That was a case where an employee filed a complaint against an employer raising a variety of issues, but none of them involved arbitration or arbitrability. Is that the only circuit case out there on this? There are other cases out there, but they're all distinguishable for the same reason, that none of them involved a situation where the complaint raised the issue of arbitrability. So there are a variety of cases, they're all cited in the briefs, where other issues were raised, but not arbitrability. And clearly, if arbitrability was not raised in the complaint, and then the defendant files a motion under Section 4 of the Arbitration Act, I think it is necessary for the party opposing arbitration to make a demand on that issue. What about your letter of November 29? How do we construe that? November 29. That's when you wrote to the court requesting the court schedule a hearing on the issue of arbitrability. It didn't seem to envision a jury trial. Yeah, we asked for an evidentiary hearing, but it became clear in early December, when Judge Smith held a hearing on the competing motions. He quickly determined that the issue here was arbitrability, and that was going to necessitate a trial. And at that time, at that hearing, it was maybe December 8th, something like that. At that time, we raised the issue of the jury, pointing out that we had demanded a jury in the complaint, and that we had raised the issue of arbitrability, which he found to be the case. There is, although it's an unusual situation, there is now another case. There was a case that just came down in January of this year, the Cullen case we cited in our brief, the district court case from Kentucky. But that case is very instructive because the judge took a lot of time analyzing Section 3 and Section 4 of the Arbitration Act, and concluded the same way that Chief Judge Smith did, that under these circumstances, where the complaint raised the issue of arbitrability, it's not necessary to make a second demand because Section 4 has been complied with. A demand on the issue of arbitrability was made before the return date on the motion to compel arbitration. That's what happened here. So for that reason, Judge Smith was entirely correct. Let me address briefly the plural evidence issue. I think Your Honor is absolutely correct. It is irrelevant in this case because there was a question as to formation, whether there was a contract and when the contract was formed. And for that reason, the plural evidence is simply not relevant. In addition, it wasn't properly raised by IDL. They didn't raise the issue of plural evidence until their post-trial motions. So they waived it. Not only did they waive it because they raised it too late, they waived it because the way the trial proceeded, even though ACI was the plaintiff, they had the burden of proof under Section 4, so they actually presented their evidence first. And they called VCI witnesses as adverse witnesses. And they asked them about the January 17 and January 18 email exchange. So they put in the evidence that they now say was incorrect for Chief Judge Smith to have allowed in. So clearly they waived that issue as well. IDL argues that there was sufficient evidence for the jury to find that the contract was initially entered into on January 18, but they claimed that the contract was then superseded. I think they simply misread UCC Section 2-204 and 2-207. All you need under the UCC for contract formation is the parties to manifest an objective manifestation of the intent to contract, which we have here. It's true that the price term was fluctuating a very small amount. In fact, if you compare the January 18 email with the final price, which was the fourth purchase order that was issued months later, the difference is about $50,000 on an $11.1 million contract, so less than half of a percent difference. And that's why, you know, it's for situations like this that the UCC changed the common law rule. Suppose you and I make a deal, $11 million plus or minus $50,000. We'll confirm it in a week, and we'll use the legal Zoom contract form A to confirm it. Are we both bound by everything that's in the legal Zoom contract form A? Well, if the offering party agreed to that. I just heard the agreement. The agreement was I propose $11 million plus or minus $50,000. We'll use the legal Zoom form A, and you say yes. I think the offeror might have a problem in that situation. That's not the case here. Explain to me why not, because I think reduced to its essence, that's their argument. I think they are characterizing the January 18 transaction as, yes, we have a deal, $11 million plus or minus some small amount, and we'll use the purchase order rather than legal Zoom form contract A. So that's how they're trying to characterize it. Because through the course of dealing, the purchase order served a couple of purposes. Number one, it gave BCI a number that they could bill against. They billed every week on this contract. And if they didn't have a purchase order number that conformed to a number on a purchase order, they couldn't get paid. So that's what they were concerned with, and that's why they repeatedly asked for information about the purchase order. It had nothing to do with that one page of unreadable terms. Now, the reason those terms didn't become part of the contract, actually, there are a number of reasons. You have to look at 2-207. So under 2-207, those terms could have become part of the contract if that purchase order was an acceptance by IDL. But it wasn't, because if you look at the terms, the terms itself say that these terms do not constitute an acceptance. So the first part of 2-207-1 doesn't apply. It also doesn't act as conduct that could be construed as an acceptance with the additional or different terms being a proposal to modify the contract. And it doesn't because, again, those terms specifically said that additional or different terms don't become part of the contract unless the other party expressly agrees to them in what they've been signed off on. And, in fact, the terms suggest that DCI should have signed and returned that purchase order, which they never did, and actually they were never asked to, because the parties never discussed any of those terms, ever. And finally, those terms don't become part of the contract because they materially altered the contract. And here Rhode Island and Pennsylvania law are in agreement that adding a mandatory arbitration clause is, as a matter of law, a material change in the contract. So the only way that could have become part of the contract is if DCI expressly agreed to it, which it never did. Now, I know that there is a, although Rhode Island and Pennsylvania law seem to be united, that it's adding an arbitration clause is, as a matter of law, a material change. There are some circuits that have gone the other way, like the Second Circuit,  However, here, we didn't rely solely on the fact that, as the case law suggests, as a matter of law, it's a material change. We also put in evidence of surprise and undue hardship. Now, I know IDEAL takes the position that the court erred by admitting some of this evidence, and probably some of it might have been based on hearsay, but certainly not all of it. Mr. Long testified, and he's the CEO of the company, as to the expense that would be associated with arbitration. He knew that because he was the one who was paying the bills. And he was aware that the arbitrators were charging $1,300 an hour. So that was in hearsay. And also, his testimony as to undue hardship would, we submit, have been admissible lay opinion under Rule 701 as to the hardship that it would have on the company. So for all of those reasons, we submit that the district court was correct in denying the Rule 50 and Rule 59 motions. Thank you. Thank you, counsel. Mr. Hellman. Thank you again. On the question of Section 3 versus Section 4, concededly, initially, IDL invoked both Section 3 and Section 4. Like VCI, which had initially only requested a hearing before Chief Judge Smith and then changed their mind, once VCI started to press for a jury trial, frankly, IDL looked more closely at Section 3 versus Section 4, and we formally withdrew any reliance on Section 4. There's a suggestion that we did this at the 11th hour and on the eve of trial. I would disagree with that. In our reply brief on the original motion to strike, we characterized this as a Section 3 and not a Section 4 matter. More than a week before trial, we eliminated any reliance on Section 4. Hence, there was no Section 3 claim. With respect to your Honor's question, I would ask the court to consider the email exchange on January 24, which is at Appendix 555 and 556, where VCI plainly recognizes that the purchase order transmitted on January 24th was an offer of a new contract, which they accepted. Thank you very much. Thank you, counsel.